No. 4134

Second Circuit

(Second Division)

FRENCH v. WEAVER BROS. ET AL.

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)

E. G. Prudhomme, of Natchitoches, attorney for plaintiff, appellee.

Breazeale & Hughes, of Natchitoches, attorneys for defendants, appellants.

CULPEPPER, J. Plaintiff sues to recover compensation in the sum of $9.75 per week for thirty weeks for the alleged total loss of use of the index finger on his left hand; also the additional sum of $9.75 per week during 150 weeks for alleged injuries to his left hand, arm and shoulder. The injuries complained of were alleged to have been sustained while employed by defendant as a saw filer at defendant's sawmill at Flora, in Natchitoches parish, on December 2, 1930. He was receiving a salary of $150 per month at the time of the accident.

Defendant admits plaintiff received a slight temporary accidental injury to his index finger at the time and place alleged, and while engaged within the scope of his employment, but denies the injury was permanent. Defendant further avers as a special defense that shortly after the alleged injury defendant gave plaintiff employment again at the same occupation and at an increased wage. The reason defendant increased his wages was that defendant operated its sawmill only two or three days a week, and that for several weeks plaintiff continued to perform the same work he had previously performed, and at the increased wage of $7 per day for every day the mill operated, until plaintiff voluntarily quit his job.

Upon the trial of the case plaintiff was awarded a sum equal to 65 per cent of $7 per day for 12 weeks, beginning December 2, 1930; also awarded $13.98 per week "for the remainder of eighteen weeks." We take it that the judge intended the total award to be for 30 weeks from the date of the accident and resulting injury, the first 12 weeks to be for say $13.65 per week, being on the basis of a monthly salary of $210, and the remaining 18 of the 30 weeks was to be for the exact sum named, $13.98. We do not understand just how the trial judge arrived at the exact figures $13.98. Defendant alone prosecutes the appeal from the judgment. Plaintiff has not answered the appeal.

There is no dispute as to the fact of the employment and that the injuries received arose out of and were incidental to the employment, also that plaintiff was at the time, and had been for some months prior, engaged as a saw filer for defendant at a monthly salary or wage of $150. Plaintiff asks for compensation on the basis of this amount of monthly salary.

The main facts in dispute are as to the extent of the injuries and resulting disability. While plaintiff's duties were that of a saw filer, the testimony shows that at the time of his injuries he was assisting Mr. "Rachal," the millwright, to do some repairs on the mill. Plaintiff was holding a board out of the way while Mr. Rachal was striking a brace with a 12-pound sledge hammer, and the hammer struck plaintiff on his finger and "edge of the hand." Plaintiff testifies that his whole hand became swollen to the "size of a baseball glove" and that as a result he could not use his hand nor arm on account of the soreness. He went to Dr. Keator, the defendant company's physician, who treated him. Some four days later an x-ray photograph of the injured hand was taken which revealed a lineal fracture of the phalanx bone of the left index finger. The joints themselves appear normal. It seems clear, as testified to by all of the

physicians, except possibly one, that there should be no permanent stiffening of the joints, and that in course of time plaintiff will have completely recovered the normal use of his finger. Dr. Keator gives it as his opinion that within seven or eight months from date of injury the finger should become perfectly flexible, if plaintiff should continue to massage it as the doctor had prescribed five or six months from date of injury. Dr. Phelps places the duration of time at ten months. Dr. Reed states that where there are no complications one should expect complete recovery in four to six months. Dr. Reed says the degree of flexibility at time of the trial, April 16, 1930, is hardly half in the whole finger, the finger slightly emaciated, and that the results from now on are going to depend largely on his (plaintiff's) own way of treating the finger. There is a way of bringing the finger back to a normal condition "by persistent massaging and persistent manipulation of the joint." Dr. Derouen is of the opinion that the injury will result in the permanent loss of use of the finger.

As to the percentage of impairment or disability during the period of recovery, the physicians estimate it variously from 10 to 30 per cent. The physicians all seem agreed that there is no impairment to the hand, arm and shoulder, but that the injury is confined to the finger only, and is only partial.

Payment of compensation for total disability due to the injury to plaintiff's finger during the period of such total disability would suffice for the disability from any other injury than that of the finger, such as the hand, arm or shoulder. Plaintiff was injured December 2, 1930, and went back to work January 11th following. This would make a total disability period of 34 work days, not counting holidays other than Sundays. He is therefore entitled to 65 per cent of the amount of his weekly wages during this 34 days of total disability. To arrive at what this will amount to, we divide his monthly salary of $150 by 26, the generally recognized number of work-days in a month, in order to ascertain the average daily wage, and multiply the daily wage by six to find the sum of the weekly wage; then take 65 per cent of that sum to obtain the amount of the weekly compensation for this period of total disability. The result will show an amount in excess of $20, which, under the act, will be reduced to $20 as a maximum compensation. There are five and two-thirds weeks embraced in these 34 days. Therefore, plaintiff is entitled to a weekly compensation of $20 per week for a period of five and two-thirds weeks for total disability. The trial judge has granted compensation for a total period of 30 weeks, as we construe the language of his judgment. Deducting five and two-thirds weeks of total disability from thirty would leave twenty-four and one-third weeks during which plaintiff would be entitled to compensation for partial disability. The district judge apparently estimated the amount to cover partial disability at $13.95 per week. We do not know on just what basis this amount was arrived at.

As to the amount of partial disability, we think it fair to say, from the evidence, and from the fact that the trial judge gave compensation for only 30 days, that this partial disability was temporary. The case then comes under section 8, subsection 1(c) of the act (Act No. 242 of 1928, p. 357), if the proof be sufficient to warrant the finding that the partial disability be great enough to prevent plaintiff from doing work of a reasonable character. Subsection 1(c) provides that:

"For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

Plaintiff was earning $150 a month at time of the injury, which according to our calculation equaled $5.77 per day. Mr. B. D. Weaver of defendant firm testified that he continued to carry plaintiff on the payroll up until December 10th after the accident on December 3rd, but he does not state he paid plaintiff during that period. Mr. Weaver also states that the mill was closed down on the 10th of December ou account of the general business depression and did not start up again until January 12th, and that plaintiff, having recovered, returned and began work when the mill started. Both plaintiff and Mr. Weaver agree that they entered into an agreement at the time by which plaintiff was to be paid $7 per day for each day the mill ran; that this change in the compensation was had in view of the fact that it was Mr. Weaver's intention to operate the mill only part time, and not regularly. The proof shows that plaintiff worked each day the mill operated on through January, February and up to about March 9th, when plaintiff says himself he quit because Mr. Weaver would not settle with plaintiff for the insurance which he claimed Weaver owed him. Plaintiff admits he performed his work just as he had done previous to his injury. He makes no claim in his testimony that he was unable to do the work. Mr. Weaver testified that plaintiff performed his work satisfactorily. No one has testified that plaintiff ever complained that he was unable to work or that he had to work with difficulty, except plaintiff himself. He said his injured finger and hand pained him at times when he worked, and that he complained a number of times to some of those about the mill. The fact remains, however, that plaintiff did perform every day the mill ran, the same work he performed before he was injured, and that he received $7 per day instead of $5.77 per day, as wages under the special agreement with Mr. Weaver above mentioned.

To all intents and purposes, and appearances, plaintiff felt himself able and was able to, and did, perform these same services that he had performed before, and with equal efficiency. No doubt he experienced some pain and discomfort at times in doing so. His daily wage while the mill was in actual operation, and he had the opportunity to work, exceeded his previous daily wage, and he apparently was as well able to perform the work as before.

In Lasyone v. Grant Timber & Mfg. Co., 2 La. App. 522, the court held that:

"Where the proof shows partial disability, employee is entitled as compensation to the difference between his wages at the time of injury and the wages he is able to earn thereafter, and as the proof shows that his wages after the injury are equal to those before, nothing can be awarded."

In Reeves v. Dietz, 1 La. App. 501, the court held that:

"In determining the amount of compensation in cases involving a partial disability the phrase 'is able to earn thereafter' does not mean the maximum sum earned in any one week but a fair average of the weekly wage an employee is able to earn covering a sufficient period of time to determine his earning capacity."

We think it clear that the fact that plaintiff was able to hold his job from January 11th to March 10th and to per-

form his work without apparent difficulty, except possibly for some pain and discomfort at times, with satisfaction both to himself and to his employer, is conclusive that he was able to earn, and in fact did earn, as much as he had before the injury. Chancellor v. Continental Lbr. & Tie Co., 6 La. App. 370.

In Barnes v. American Can Co., 7 La. App. 597, the court held that—

"A partially disabled employee can recover only for the difference in wages earned before and after the accident, even though work is done with considerable pain and he must show by a preponderance of evidence the financial loss sustained by him as a result of the injury."

Plaintiff sustained no financial loss by reason of the injury. On account of the general business depression the mill operated only part time after plaintiff was able to go back to work, otherwise he doubtless would have held his job at his former work or salary. The fact that plaintiff could not put in enough time to amount to his original $150 per month was due not to plaintiff's injuries, but to the general business depression. Plaintiff received just as much daily wage after his period of total disability ceased as he would have if the accident had never happened. It is true his earning ceased on March 10th, but that was because of his own voluntary act and fault, for he could easily have continued to hold his job at the same rate of pay, and could have performed the work as he had done before.

Plaintiff did not lose his finger, nor the permanent total or partial loss of its use. Its usefulness is not seriously permanently impaired. After his temporary total disability ceased, he had no partial disability to do work of a reasonable character, by reason of the fact that he again resumed and performed, satisfactorily to himself and to his employer, the same work as before and at a better rate of daily wage.

The judgment of the lower court is therefore annulled and set aside; and there is now judgment in favor of plaintiff, T. L. French, and against Weaver Brothers Lumber Company, and the individual members thereof, viz.: S. P. Weaver and T. L. Weaver, in the sum of $20 per week for a period of four and two-thirds weeks beginning December 9, 1930, one week after date of injury, together with legal interest on each weekly sum from its respective date of maturity until paid; defendants to pay costs of the lower court and plaintiff to pay costs of appeal.