## MURPHY v. B. MUTTI, Inc., et al. *

### No. 16775.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1938.

T. Semmes Walmsley and Maurice R. Woulfe, both of New Orleans, for appellant.

Eraste Vidrine and James G. Schillin, both of New Orleans, for appellees.

JANVIER, Judge.

On December 28, 1934, Alphonse Murphy, in the course of his hazardous employment by B. Mutti, Inc., sustained accidental injury. Unable to agree with his employer as to the extent or duration of his disability, he filed suit in compensation, alleging that he had been totally and permanently disabled as the result of a "hernia and sacro-iliac injury". The employer denied that the injury was serious or permanent, averred that it was not known whether "the small left inguinal hernia" from which he at that time was suffering "was caused in the manner stated in plaintiff's petition", and averred further that the said hernia could be easily cured by a surgical operation and that, therefore, any continued disability resulted, not from the hernia, but from plaintiff's refusal to submit to the operation.

There was judgment in the District Court in favor of plaintiff, the court being of the opinion that Murphy was at the time totally disabled and that the disability resulted from injury sustained in the line of duty. The district judge, however, further concluded that the disability was solely caused by the hernia; that a surgical operation would relieve it and that such an operation would be attended with so little danger that plaintiff should submit to it at the expense of the employer, or, in the

*Rehearing granted Jan. 10, 1939.

alternative, lose the right to further payments of compensation.

From a judgment rendered in accordance with these views the defendant appealed.

When the matter came before us we found that there was complete disability which would "in all probability" continue "until a successful operation has been performed." We were relieved of the necessity of determining whether the plaintiff should be compelled to submit to the operation or forfeit further compensation payments because the said plaintiff, in answer to the appeal, agreed to submit to the operation under the terms and conditions set forth in the judgment appealed from.

For a full statement of the matter at that time and for full details of the judgment under review then, see our original opinion. 166 So. 493.

As we have said, we found that, for the results of the injury, defendant was liable in compensation, and, since we found the defendant contending that plaintiff should submit to the operation and plaintiff asserting his willingness to do so, we rendered a decree from which we now quote, as follows [page 496]:

"It is further ordered * * * that within 30 days from the finality of this decree the said plaintiff shall submit to an operation for cure of his hernia, by a surgeon to be selected by him, all hospital and medical costs to be paid by said defendant B. Mutti, Inc., and that in the event he arbitrarily refuses to submit to such operation or delays, without just cause, its performance, then defendant is to be relieved from the payment of compensation for the period between the expiration of 30 days from the finality of this decree and the day on which he submits to such operation and the said period is to be deducted from the period of 400 weeks. * * *"

At that time plaintiff was entitled, under the judgment, to compensation payments for 73 weeks. These payments were made by defendant. Arrangements were made for the operation to be performed within the thirty-day period fixed in the decree and, on May 18, 1936, Murphy went to the hospital, where he was examined by his physician and surgeon and found to be in satisfactory physical condition to undergo the operation. He was put to bed in the hospital on that day—May 18th—so that he might receive the necessary preparatory treatment for the operation, which was scheduled for the morning of May 20th. On May 19th, without the knowledge or consent of the hospital authorities, or of the defendant, or of anyone else, so far as the record shows, Murphy deserted and was not located until two days later. The operation was not performed and defendant heard no more of him until nearly one year later, at which time he claimed to be entitled to further compensation for the remainder of the period of 400 weeks, declaring that he had had good cause for failing to present himself for the operation on the previous May 20th and that he had since developed pulmonary tuberculosis, which would permanently prevent his submitting to the operation. He thereupon appeared by petition in the original proceeding and alleged his present total and permanent disability as the result of the hernia, for which he asserted he could not now be operated on because of the tuberculosis, and also that, in addition to the disability produced by the hernia, he would be permanently disabled by the said tuberculosis. He prayed that our decree requiring that he submit to the operation be amended and that he be awarded compensation for 400 weeks, subject to a credit for the payments already made.

In the District Court there was judgment rejecting his demand, the district judge being of the opinion that he had "arbitrarily and without justification left the hospital of his own free will and accord."

Plaintiff bases his right to an amendment of the decree on Section 20 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, which provides that a judgment in compensation may be modified on the ground that "the incapacity of the employee has been subsequently diminished or increased, or upon the ground that the judgment was obtained through error, fraud or misrepresentation."

There is not involved here any question of error, fraud, or misrepresentation, nor even of whether or not there has been an increase or decrease in the extent of the disability, unless the tuberculosis has made the disability complete and permanent regardless of the effect of the hernia, and, so far as the tuberculosis is concerned, there is nothing in the record which creates the slightest impression that it was in any way caused by the accidental injury, and we, therefore, dismiss it from consideration as a direct cause of the present continued disability. We have already

218

found that the disability resulting from the hernia is total and will be permanent unless removed by an operation and, therefore, the main question now to be determined is whether the plaintiff was justified in refusing to submit to the operation at that time and, if so, whether he should submit now.

█ It is necessary that we determine whether Murphy was justified because it may be that, if we agree with the district judge, the necessary result might be the forfeiture of compensation payments for that portion of the period of disability which followed the day on which the operation was to have been performed. Murphy did not state his reason for leaving the hospital, but his physician, Dr. Levy, who saw him two days later, says that at that time Murphy said to him: "I felt sick and I went home." Dr. Levy testified that when he saw him two days after the time set for the operation "he had what appeared to be a cold * * * and a temperature of 101 degrees" and, the doctor added, "I knew he couldn't be subjected to any operation at all * * *." The doctor further said: "I was suspicious he had a beginning tubercular lesion." It is shown that, on the advice of Dr. Levy, Murphy went to the clinic of the Orleans Anti-Tuberculosis League, where he was admitted on August 20, 1936. At that time, though the conclusion was based largely on a history given by plaintiff himself, Dr. Brown at the clinic made a diagnosis of "pulmonary tuberculosis of the minimal type". It is thus plain that there was some evidence of at least susceptibility to tuberculosis, which all of the experts agree would render it doubtful whether it would be wise to perform such an operation under a general anaesthetic. It is quite true that there is no positive showing that on May 20th, the date set for the operation, Murphy was suffering from tuberculosis or cold. But the fact that only two days later he was found with almost three degrees of fever and suffering from a cold impels us to feel that, in all probability, on the 19th, when Murphy deserted the hospital, his fear and apprehension were somewhat induced by an illness which had at that time set in and which would have prevented the operation even had he remained in the hospital prepared to submit.

It is said that the tuberculosis did not develop since the accident but that he had been a sufferer from it years ago and had been entirely cured before the accident occurred. But Dr. Menville, a radiologist and diagnostician produced by defendant, stated that, while it was his opinion that the calcified lung tissue which he found and which evidenced a prior attack of the disease had resulted a long time prior to the accident, it was possible that it might have occurred during the preceding year. If so, it would have appeared just about the time plaintiff deserted the hospital.

Dr. Jamison, another expert who was placed on the stand by defendants, stated that he would not have advised an operation if the patient was suffering with a cold or fever, and, furthermore, he stated that, since there were evidences of prior suffering from tuberculosis, it would be best, if an operation should be performed, not to resort to a general anaesthetic.

We conclude, from all of this, that Murphy, an ignorant colored laborer, was justified in not remaining for the operation at the time for which it was originally set.

█ Should we order it now? It is the opinion of the defendant's experts that it would be practically certain of success and that little, if any, danger, would attend it. But, as we have said, Dr. Jamison advised that, if it be performed, it should be under a local anaesthetic because of the bad effect of the general anaesthetic.

On the other hand, Dr. Levy, plaintiff's physician and surgeon, says that in no event would he advise the operation now because of the susceptibility to tuberculosis.

In our original opinion we discussed at length the jurisprudence concerning operations in compensation cases and we cited abundantly from authorities which induced the conclusion that, while, as a theoretical matter of law, operations must be resorted to where they are practically certain of success and are almost entirely free from danger, nevertheless, as a practical matter, almost never do the courts find circumstances which justify a decree requiring that the plaintiff submit.

We conclude here that, in view of the fact that plaintiff's own physician now advises against the operation and in view of the fact that one of the experts tendered by the defendant is of the opinion that the operation should be performed only under certain conditions, it cannot be said that, to perform the operation would so certainly produce proper results and that its performance would be so definitely free of danger as to bring this case within the doctrine that an operation may be resorted

to where there is practically no danger and where there is almost certainty of success.

We conclude that plaintiff was justified in not remaining for the operation scheduled for May 20, 1936, and that he should not at this time be required to submit to one.

It is therefore ordered, adjudged and decreed that the original decree rendered by this court on March 9, 1936, be and it is recalled, the judgment of the district court presently appealed from annulled and set aside, and it is now ordered that there be judgment in favor of the plaintiff, Alphonse Murphy, and against the defendant, B. Mutti, Inc., in the full sum of $9.75 per week for the period of his disability, not exceeding 400 weeks, with legal interest from April 6, 1937 on each weekly installment which up to that time had become due and with legal interest from date of maturity on each subsequent installment until paid, subject to a credit for payments for 73 weeks already made. Costs of appeal to be borne by defendant.

Original decree recalled; judgment appealed from reversed.