### SIMMONS v. BLAIR et al.
### No. 2007.

Court of Appeal of Louisiana. First Circuit.

June 30, 1939.

Elmer L. Stewart, of DeRidder, for appellant.

McCoy, King & Jones, of Lake Charles, for appellees.

LeBLANC, Judge.

The plaintiff in this case, as shown by his petition, was employed as a carpenter by A. Farnell Blair who was engaged in construction work for Swift & Company when that company was erecting a packing plant just east of the City of Lake Charles. He claims to have sustained in an accident, a serious injury to his right knee while in the performance of his duties on December 3, 1937, as a result of which injury he alleges he is permanently and totally disabled from doing any reasonable labor.

He avers that he was placed on compensation and paid to the amount of $125.71, but that his employer and the latter's compensation insurance carrier, the Liberty Mutual Insurance Company, have refused to pay him any further sum notwithstanding the demands made by him on both of them. He alleges that he was earning wages of $1 per hour and is therefore entitled to the maximum amount of compensation of $20 per week as provided for in the Workmen's Compensation Statute, Act No. 20 of 1914. His demand is for compensation at that weekly rate for a period of not more than 400 hundred weeks with interest at 5% on all past due installments, less the sum of $125.71 already paid to him.

The defendants filed a joint answer and the defendant Liberty Mutual Insurance Company also filed a separate answer. The same defenses however are presented in both answers.

Both defendants deny liability and both plead several special defenses. First, they aver that the relation of employer and employee did not exist between the plaintiff and the defendant A. Farnell Blair and that consequently neither Blair nor his insurer are liable for compensation. In the alternative they allege that the accident in which plaintiff claims to have sustained an injury and his resulting disability did not arise out of and was not incurred in the course and scope of his alleged employment by Blair and that if he has a disabling condition in his right knee it was one which existed long before and was not aggravated as a result of his employment. As another alternative defense they plead that if there was an accident and injury and disability as alleged by him, plaintiff has fully recovered from same as admitted by him and further that if any disability still exists the same occurred

from disease and causes which were in no way connected with the said accident. Again in the alternative, they plead that if plaintiff's injury and disability still exists, "the same can be completely remedied, repaired and removed by a reasonable, harmless, simple, minor, surgical operation, unattended by risk, without any real danger to life or serious consequences, which will improve plaintiff's condition; yield a positive betterment; and will remove the alleged disability." Still further pleading in the alternative, defendants aver that on April 18, 1938, such an operation as is referred to was tendered plaintiff without expenses on his part and without any admission of liability for compensation on the part of defendants, which was refused by him and that such refusal, unreasonable and arbitrary as it was, bars his recovery for compensation. As a final alternative, defendants again tender such an operation to be performed by a surgeon of plaintiff's own selection, however without admission of liability or disability on their part.

The case was tried in the lower court on the issues as thus presented and the district judge in a well considered written opinion disposed of them all except the alternative plea that plaintiff's condition could be relieved with reasonable certainty by a simple, minor and harmless operation and that a valid tender of such an operation had been made on April 18, 1938, in favor of the plaintiff. These two issues he decided in favor of the defendants and accordingly rendered judgment awarding plaintiff compensation at the rate of $20 from December 3, 1937 to April 18, 1938, subject to a credit of $125.71, and further ordering that should plaintiff within a reasonable time elect to undergo the operation tendered, then and in such case, compensation payments shall be resumed and paid for a period of 8 months after such operation.

From that judgment plaintiff took this appeal and defendants have answered urging again all other defenses presented by them and praying that the judgment be amended by denying plaintiff's claim in toto.

We find but little difficulty in agreeing with the district judge in the manner in which he disposed of all the preliminary issues, as we may refer to them, that is those with regard to the relation which existed between the plaintiff and the defendant Blair, the rate of pay, the injury sustained as a result of an accident which happened while plaintiff was acting in the scope and course of his employment and the existence of the disability claimed. A fair preponderance of the testimony, we find, supports his finding on each of these points. The manner in which plaintiff says he sustained the injury to his knee and the fact that he continued to work the same afternoon may well have caused some doubt in the minds of the defendants, but the fact remains that he has a condition in his knee now which did not exist before and his account of the happening of the accident is not contradicted by anyone. One witness testifies regarding certain admissions he says plaintiff made to him about having an injured knee prior to the accident. Dr. Holcombe, one of the experts who testified in the case, states that it was his impression that the injury was a pre-existing condition. In view of all the other testimony however we certainly do not feel as though we would be justified in setting aside the finding of the trial judge on this important point in the case.

The vital issues as we view them, and as did the district judge, are whether the existing disability can be relieved by a simple, minor and harmless surgical operation, unaccompanied by great pain and unattended by serious risk to life or injury to limb, and the effect of the tender made by defendants of such an operation.

The law on the question of an injured employee's rights and his obligations in the matter of submitting to an operation, in relation to our Compensation Statute, was duly considered and passed on, as far as this court is concerned, in the case of Leday v. Lake Charles Pipe and Supply Co., 185 So. 655. We held in that case that where the medical testimony shows that an operation of the character just described would, with almost certainty of success, produce relief from a disability, it would be unfair and inequitable for an injured employee to unreasonably refuse to submit himself to such an operation and continue to draw full compensation. In Martin v. Wyatt Lumber Company, 4 La.App. 157, the court placed the injured employee who wilfully neglected or refused treatment tendered him by his employer, as a means of recovery from his disability, in the category of a malingerer whose conduct would be violative of the principles of common sense and good mor-

als. The questions to be decided first in this case then, are the seriousness of the injury to the plaintiff's knee and the nature, extent and seriousness of the operation involved and its probable result. These are questions of fact, but facts, which as can be readily seen, can only be determined from the medical testimony found in the record.

In the medical language of the experts who testified, the condition in plaintiff's right knee consists of a fractured internal semilunar cartilage which protrudes to the medial side of the knee joint causing a tumor mass or growth at that point. Their language becomes simpler and better understood when they liken the injury to those frequently sustained by athletes, especially football players, who engage in hard and intensive physical activities. In the opinion of these experts such an injury does incapacitate a man from doing hard, manual labor and will continue to disable him unless the condition is removed by an operation. They all, including plaintiff's own expert witness in this case, Dr. L. Z. Kushner, are definitely of the opinion that an operation is the only means by which plaintiff can obtain relief. Their opinion would seem to be justified when we consider the negligible results obtained through treatment administered to him.

Satisfied as we are therefore that an operation holds out the only hope to plaintiff for relief and restoration to his former condition, it becomes important next for us to consider the seriousness of such an operation. We realize, as laymen, that plaintiff's condition is more serious and involved than was that of the plaintiff in the Leday case where only the amputation of a finger was indicated and yet giving consideration and weight to the opinion of the medical experts, we are bound to conclude that in the hands of a surgeon who specializes in this kind of work, the operation to be performed on plaintiff's knee would hardly be attended with any more serious risk or danger. This operation, we are told, consists of opening the knee joint, making a split in the capsule and then removing the loose or fractured portion of the semilunar cartilage, after which naturally the joint is closed again.

A difference called to our attention by counsel for plaintiff between this and an operation like in the Leday case is that in this case a general anesthetic would be required. Some of the doctors say that it could be done under a local but it would seem that a general anesthetic would be preferable. Assuming, however that plaintiff is in condition to take a general anesthetic, which obviously would have to be ascertained before it is administered, we cannot appreciate from the testimony given, what difference that would make. An anesthetic, as we understand, is given to make the patient insensible to pain, one of the conditions laid down under which an injured employee would be required to submit to an operation, and it would seem to us that in this respect, a general anesthetic, where possible, would be the more desirable.

In considering the seriousness of the operation itself, we are impressed with the statement of Dr. R. G. Holcombe who says that he personally would rather undergo this type of operation to a tonsillectomy. Dr. J. E. Digiglia, who apparently knows the plaintiff's physical condition well, does not hesitate to recommend such an operation as is indicated in his case which he considers a simple one and very common in the practice of orthopedic surgery. Dr. H. A. Durham, an orthopedic surgeon of thirty years' experience, classes the operation as simple and common, one which is unattended by any reasonable probability of fatality and which would undoubtedly result in bettering plaintiff's condition and in all probability bring about his complete recovery. Dr. Kushner, plaintiff's expert witness, would not class the operation as minor but does express the belief that in the hands of a competent orthopedic surgeon it would be all right for a patient to submit to it. Dr. Walter Moss, who was also summoned as a witness by defendants, could not appear to testify at the trial of the case but it was agreed that his testimony, if taken, would coincide with that of Drs. Durham, Holcombe and Digiglia. As for the results of the operation it need only be said, in our opinion, that doubtless these doctors who so strongly recommend it would not do so unless they felt reasonably certain that it would restore to the plaintiff the use of his right leg. On the testimony adduced the district judge was justified therefore in ordering the operation as a condition precedent to plaintiff's receiving further compensation.

We agree with the learned district judge that plaintiff was legally tendered

an operation by the defendants on April 18, 1938, but cannot concur in his holding that the tender should have the effect of depriving him of his compensation from that date to the date on which he does submit himself to the operation. We do not believe that plaintiff's refusal to subject himself to the operation at that time should be classed as unreasonable and arbitrary. He did not then have the benefit of all the information now available to him through the testimony of the numerous doctors who testified in his case. As laymen we can well understand the apprehension of the average person to whom an operation like this might be suggested and his hesitancy in submitting to it until he is made to understand that it is the best and the only way in which he can obtain relief. Besides, plaintiff was being represented by counsel at the time he was tendered the operation and his counsel advised him not to submit to it. We do not think that he should be penalized for following this advice which no doubt was honestly given. It would seem also that he was endeavoring to cooperate in another way to get relief, as the bill of Dr. F. R. Frazer who administered therapy treatments to him covers the period of from February 1938 to November of that year. We are of the opinion therefore that his payments of compensation should have continued to run after April 18, 1938.

 Neither can we agree with the learned district judge when he fixes a definite time at which payments of compensation shall cease after the operation. It is true he gave plaintiff the benefit of the longest estimate of time given by Dr. Durham, but it is our idea that the decree entered in the Leday case is the one which is fairer to all parties concerned and the proper one to follow in a case of this character. Under that decree the court does not arbitrarily fix the period of disability itself but provides for payments of compensation as in cases of total, permanent disability, reserving to the defendant the right to show at any time after the operation that the disability no longer exists in order to relieve itself of the payment of further compensation.

We find it necessary therefore to revise and amend the judgment appealed from and for these reasons, it is ordered that the judgment appealed from be amended by allowing plaintiff compensation at the rate of $20 per week for a period not exceeding 400 weeks, beginning December 3, 1937, with legal interest on all payments past due and unpaid until paid, subject to a credit of $125.71; the defendants to pay all costs.

 It is further ordered, adjudged and decreed that within a period of 30 days from the date on which this judgment becomes final, the plaintiff is required to submit to an operation on his right knee, as described herein, by a surgeon of his own selection and at the exclusive costs of the defendants and on his refusal to submit to such an operation within that time and without reasonable grounds, the compensation awarded hereunder is to cease after the expiration of the said 30 days; provided further that at any time, after the said operation herein ordered, the defendant is given the right to show that by reason thereof, or otherwise, plaintiff's disability no longer exists and his compensation should cease.