## HALL v. MENGEL CO., Inc.
### No. 2037.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1939.

Breazeale & Sachse, of Baton Rouge, for appellant.

Carlos G. Spaht and Fred G. Benton, both of Baton Rouge, for appellee.

OTT, Judge.

Plaintiff alleges in his petition that he sustained an injury to his abdomen which caused an inguinal hernia in his right side on November 2, 1938, the injury having been caused by a fall against a piece of machinery on which plaintiff was working. He alleges that he was receiving $13.20 per week and he claims compensation at the rate of $8.58 per week for a period not exceeding 400 weeks, and medical expenses not to exceed $250. He claims that he is totally and permanently disabled from performing hard manual labor, the kind of work he was doing when injured.

The trial court awarded compensation as prayed for and allowed $26 for medical expenses incurred, and cost of the suit, including fees of the expert witnesses who testified in the case. No amount was fixed in the judgment as fees for the experts. The defendant has appealed, and the plaintiff has answered the appeal, asking that the judgment be amended by fixing the fees of the medical experts who testified for the plaintiff in the case.

There is no question but that plaintiff sustained an injury which caused an inguinal hernia on his right side and a small or potential hernia on his left side, and that these hernias will cause total permanent disability to do hard manual labor unless the bilateral hernia is cured by an

operation. After the suit was filed, the defendant tendered the plaintiff an operation at its expense, but the operation was refused by the plaintiff, who assigned as reasons for his refusal that the operation is a serious one and would cause a great deal of pain, endanger his life, with no certainty of success.

The sole question presented on the appeal is whether or not the plaintiff should submit to the operation, or else have his compensation cease within such time as might be sufficient to cover his convalescent period after the operation. Put in a different form the question is whether or not the refusal of the plaintiff to submit to the operation is reasonable or unreasonable.

It is shown that plaintiff is a young man twenty eight years of age; that his organs are in good condition and his general health is good, except for the hernia. All the doctors agree that the only way that plaintiff can be permanently cured is by an operation—in medical terms a herniotomy. From the opinions of the doctors as a whole, we would say that the danger of fatal results would be about one per cent, and the chances of a recurrence from five to ten per cent. It would be necessary to administer either a local or a general anaesthetic, and the operation would take from one to one and a half hours. The patient would be required to stay in bed about three weeks and his convalescing period would be three or four months. There would be some pain and discomfort, and the principal dangers from the operation would be post-operative pneumonia, bleeding, septic poisoning, and the cutting of the spermatic cord. The doctors class a herniotomy as a major operation.

▮▮ After a careful consideration of the question as to when an injured employee should be required to submit to an operation for the relief of his disability, or else have his compensation discontinued, we undertook to state the rule in the case of Leday v. Lake Charles Pipe & Supply Company, La.App., 185 So. 655, 657, as follows: "Our jurisprudence is well settled that an employee cannot be required to submit to an operation to relieve a disability where the medical testimony shows that the operation will be accompanied by great pain and may seriously endanger life, or where there is doubt as to the removal of the disability by the operation. In such a case the employee is not required to endanger his life or gamble with his chance of recovery by submitting to a dangerous and uncertain operation. But where the medical testimony shows, as it does in this case, that the operation is a minor one, unattended by danger of any serious consequences, with little pain and suffering, and with almost a certainty of success and relief from the disability, it would be unfair and inequitable for plaintiff to continue to draw full compensation when he has it within his power to minimize the damage by submitting to a minor and relatively simple operation."

We followed and restated our understanding of the law on this point in the more recent case of Simmons v. Blair et al., La.App., 190 So. 212. Applying the rule to the present case we do not think the refusal of plaintiff to accept the tendered operation was unreasonable for the following reasons: first, the operation is not a minor or simple one, but is classed as a major one; second, the danger to life—one chance out of a hundred of losing his life—is too great, and the probability of a recurrence—from five to ten per cent—renders the result too uncertain; and, third, there would be considerable pain and discomfort, with a long period of confinement and convalescence.

A rather casual examination of our reports shows that the courts of this State have consistently refused to require an injured employee to submit to an operation for hernia. With no claim that the list is complete, we cite here some of the most pertinent cases in which our courts refused to require a hernia operation: Addison v. Powell Lumber Company, 1 La.App. 210; Bossier v. La. Oil Ref. Corporation, 3 La. App. 205; Martin v. Wyatt Lumber Company, 4 La.App. 157; Britt v. Texas Pipe Line Company, 5 La.App. 33; Huval v. Sexton Corp., 19 La.App. 198, 139 So. 739; Durrett v. Unemployment Relief Committee et al., La.App., 152 So. 138; Finley v. Texas Co. et al., La.App., 162 So. 473.

We do not consider that the binding effect of this long list of cases has been modified or weakened in the least by the cases of Crawford v. Tampa Interocean S. S. Co., Inc., La.App., 155 So. 409 and Murphy v. Mutti, Inc. et al., La.App., 166 So. 493 and Id., La.App., 184 So. 216. The most that can be said of these two cases is that they might indicate from the language used in the opinions that our Brothers of the Orleans Circuit may go a little further in requiring submission to an opera-

tion as a condition precedent for continuing compensation than the courts of the First and Second Circuits. The Crawford and the Murphy cases are from the Orleans Court while all those which we have cited above where hernia operations were not required were from either the First or the Second Circuit. Even so, our Brothers of the Orleans Circuit did not require an operation in either of these hernia cases, and we find where that court refused to order an operation for hernia in the case of Flanagan v. Sewerage & Water Board, 19 La. App. 154, 140 So. 83, but the court did indicate that there might be some justification for requiring an operation for hernia in the case of a normal and healthy person.

The two cases of Bossier v. La. Oil Ref. Corp. and Martin v. Wyatt Lumber Company, supra, are strikingly similar to the present case. The facts as they appear from the opinions are very much the same as they are in this case. We are very much impressed with the language used by Judge Odom in the Martin case which we take the liberty of quoting here: "It is a fact known to all that hundreds of men of intelligence and with means to procure the services of the greatest surgeons of the land, go through life wearing trusses for hernia rather than submit to an operation, notwithstanding the fact that a truss is a source of discomfort in many cases and always inconvenient and more or less cumbersome. The average man dreads any kind of an abdominal operation. Instinctively he feels that when he submits to such an operation he takes a chance of losing his life, and from observation he knows that is true. For that reason men of intelligence endure afflictions through life rather than take a radical treatment which in all probability would relieve the disability but at the same time might end fatally. It may be said, we think, that the more informed people are as to the results of such operations the less they dread them, but the fact remains that the best informed do dread them. That being true, what may be expected of the average wage-earner who is not informed? He shrinks instinctively from what are recognized to be major or serious operations, and the advice of all the experts cannot remove from his mind the fear and dread of such radical treatment."

Until the time comes when the progress and improvement in the science of surgery will permit the doctors to tell us that an operation for hernia is a minor and simple one with practically no fatalities and recurrences and where pain and discomfort have been reduced to a minimum, we prefer to follow the decisions which hold that operations for hernia are not such as the courts will require an employee to place himself under the knife under the penalty of forfeiting the right to compensation. We join in the statement made to the bar by our Brothers of the Second Circuit in the Martin case: "This question of whether an injured employee must submit to an operation for hernia or else foregoing compensation, is constantly agitating the bar and is fruitful of much controversy and litigation. We have considered the question thoroughly, and our final conclusion is, that we will not order an employee to undergo an operation for hernia or else lose his right to claim compensation."

We do not deem it necessary to go outside of our State for authorities on the question. The courts of the nation are almost as far apart on the question as the two oceans are separated from each other. Anyone wishing to study this divergence of views is referred to the annotation in 105 A.L.R. beginning on page 1470. Insofar as the rule in Louisiana is concerned, the following statement is made on page 1474 of 105 A.L.R.: "Due to the lack of any statutory compulsion to submit to an operation where it is reasonably safe and offers a reasonable chance of recovery or relief, the Louisiana courts have been extremely hesitant in compelling an injured employee, by suspension or refusal of the right to compensation, to submit to a hernia operation, preferring to leave the choice of submission to the discretion of the injured party, even where it appears that the operation would not be of a serious or dangerous nature, but rather one from which recovery is generally assured."

We appreciate the force of the argument advanced by learned counsel for defendant that the plaintiff would not be ordered to submit involuntarily to the operation; that he has a right to refuse to obey the order of court should an operation be required. That is true, but his compensation would cease, and the deprivation of means for procuring the necessities of life might be just as strong compulsion toward submission as the fear of physical punishment.

With reference to the answer of the appeal asking that the judgment be amended by fixing the fees of the expert witnesses, this is a matter which the trial

court should be given the opportunity to do. The trial court is in a better position to determine the value of expert fees than an appellate court. These fees can be fixed under a rule to tax cost after judgment and as incidental to the main suit. Johnson v. Hillyer, Deutsch, Edwards, Inc., La.App., 185 So. 652; Cutitto v. Metropolitan Life Ins. Co., La.App., 172 So. 812; Nash v. Lococo, La.App., 182 So. 176.

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.