53 So.2d 170 (1951)
FREDIEU
v.
MANSFIELD HARDWOOD LUMBER CO.
No. 7662.
Court of Appeal of Louisiana, Second Circuit.
May 30, 1951.
*171 Fuller & Harrison, Winnfield, for appellant.
W. T. McCain, Colfax, for appellee.
TALIAFERRO, Judge.
Plaintiff's right knee joint was seriously injured when, while running backwards in the woods, (to avoid being hurt from a falling tree), he stepped with his right foot and leg into a stump hole. At the time of the accident he was primarily an employee of Earl Fredieu, independent contractor of the defendant, Mansfield Hardwood Lumber Company, who had engaged Fredieu to convert standing timber into logs, and to deliver them to the company's mill site in Winnfield, Louisiana. The injuries were considered to be totally disabling in character as defendant paid plaintiff compensation in the amount of $120, or for practically four months. This suit was then instituted to recover workmen's compensation at the rate of $30 per week for four hundred (400) weeks, on the theory, of course, of permanent total disability.
Defendant denies each allegation of the petition designed to serve as a basis for the cause of action. Further answering, defendant alleged that this suit is the second instituted by plaintiff wherein he sought compensation on the basis of permanent total disability resulting from injury to a knee. Amplifying it is averred that on February 26, 1949, plaintiff filed suit against E. L. Green and the Maryland Casualty Company claiming compensation on said basis, because of injury to his left knee, of the identical character as claimed in the present suit; but, notwithstanding the affirmative, verified allegations of plaintiff's petition, he compromised the suit and accepted $3,000 in full settlement of his claim. In that case the defendants sought to have plaintiff submit to an operation on the knee, but he refused. The compromise settlement referred to was approved by the Court on March 10, 1949. No trial was had. Defendant points to the fact that notwithstanding the assertion of permanent total disability by plaintiff in said suit, and receipt by him of the substantial amount in compromise thereof, he was able to perform and was actually performing heavy manual labor within six (6) months thereafter, as is disclosed by his own allegations in the present suit.
Defendant prays that the demand of plaintiff be rejected at his cost; and, in the alternative, should compensation be awarded to him, that as a condition precedent to payment thereof, he be required to submit to surgical operation of the knee, which it is averred can be corrected, if not completely cured, by a relatively simple operation; that such an operation is in no sense dangerous to life and is reasonably sure of success; that, accordingly, the plaintiff is under a duty to submit to such operation, without cost to him, in order to correct, or at least, to lessen any existing disability.
Defendant's defenses were overruled. Plaintiff was awarded judgment for compensation at the rate of $27.30 per week not to exceed four hundred (400) weeks, and costs. Defendant appealed.
The trial judge has favored us with lengthy written reasons for his judgment.
The questions tendered for decision are these:
1. The number of days constituting plaintiff's work weekwhether five (5) or six (6) days. It is made certain he was being paid $7.00 per day;
2. Whether any disabling injury of the knee remained at time compensation payments were stopped;
3. Can plaintiff be legally forced to submit to surgical operation of the knee as a *172 condition precedent to his right to demand payments of compensation, if such be awarded him, that fall due after finality of judgment herein?
As to the days plaintiff worked each week, it is true, as argued by defendant's energetic counsel, defendant was not in a position to refute plaintiff's own testimony thereon, nor that of other members of the Fredieu family, his kinsmen, who corroborated him on this score. In this respect, defendant was largely at the mercy of plaintiff. It is shown that defendant's mill closed down each Saturday at noon and received no logs after that hour. This fact is not conclusive of the issue as it must be recalled that plaintiff was not hired nor paid for his services by defendant, but by the contractor, Earl Fredieu. He only cut down trees and converted them into saw logs. This could easily have been done on a Saturday for handling the following Monday. The Lower Court discussed this issue maturely. We perceive of no error in his conclusion that a six-day week was proven.
The testimony, lay and medical, removes from doubt that at the time of trial the injury of the knee rendered plaintiff unable to perform manual labor that required the use of the right leg.
In the record is the testimony of Drs. P. M. Davis, Jr., of Alexandria, Louisiana, and Alfons R. Altenberg of Monroe, Louisiana, and a report (admitted in evidence by agreement), of Dr. A. Scott Hamilton, of Monroe, Louisiana, all orthopedic surgeons. Dr. Davis was introduced by plaintiff, while defendant used the other two. All of them recommend that plaintiff submit to surgical operation for relief of the knee.
Plaintiff testified that he was unwilling to submit to the operation unless he was guaranteed that it would be so successful that the knee would be restored to the physical condition it was in prior to the accident. Of course, this position poses an impossibility. No competent surgeon, who prizes his reputation, would make such a commitment.
Dr. Davis physically examined plaintiff on January 19, 1950, and again on May 18th of said year. On first examination the knee was found to be swollen some but there was fluid in the joint. There was evidence tending to show a tear of the anterior cruciate ligament, but this could not be definitely established as the knee was too tender for the making of complete examination. Dr. Davis, from symptoms, leaned to the belief that there probably was a tear of the medial meniscus which prevented the patient from fully extending the knee.
At time of second examination, plaintiff was still complaining of pain and locking in his right knee, which occasionally occurred. The tenderness was not so pronounced as before and this enabled Dr. Davis to make a more thorough examination. He positively found an anterior slipping of the tibia on the femur, which, he says was due to a tear or relaxation of the anterior cruciate ligament. He added: "I also thought that there was still a tear of the medial meniscus." He further testified:
"Q. Did you recommend any type of surgery? A. I recommended that the patient have surgery for removal of the medial meniscus.
"Q. In your opinion do you feel that that would have completely cured the patient? A. The removal of the medial meniscus would certainly get rid of the patient's locking sensations and give him more or less a painless knee, however, he will still probably have a relaxed anterior cruciate ligament, as usually no repair can be done to these ligaments.
"Q. In other words, I understand your statement to be that an operation would not place him in the same physical condition that he was before he received the injury? A. The removal of the meniscus will completely cure that particular part of the knee, however, the anterior cruciate more than likely can not be repaired, or any repair work that could be done usually it does not work, however, with exercises to the quadriceps muscles the patient should have a good knee which will give him very little trouble, but it will not be exactly like it was before the injury.
"Q. Will he be able to perform hard, manual labor after the operation, and if the *173 operation should be successful? A. If the patient follows directions in exercising the quadriceps muscles and if the operation is a success, the patient should be able to perform any type of manual labor.
"Q. But, Doctor, is there any way of being certain about that? A. I can not be positive in that statement, but I think it more than likely.
"Q. Is that a serious operation, Doctor Davis? A. That is a major operation, but it is not extremely serious operation."

* * * * * *
"Q. Now, whatever operations that you have suggested or recommended in this case are considered by you as serious operations, I believe you stated, but they are in no sense dangerous to human life. It is not like an internal abdominal operation that might endanger life, is it? A. Any operation to a certain extent endangers life.
"Q. You mean by that simply because it is liable to receive an infection of some kind? A. That is right; and actually infection is more to be feared in any knee joint of bone surgery than any abdominal surgery.
"Q. If precautions are taken to prevent infection, ordinarily you wouldn't have any reason to anticipate it or dread it? A. That is true, but not always carried out."
It was the opinion of Dr. Altenberg that plaintiff had sustained a "tear of the right medial semilunar cartilage". He stated that if the anterior cruciate ligament was injured, it was of such minor degree that repair would not be necessary, as it would cause no disability nor ill effects. He added that the operation he recommended is considered a major one, but that the only danger involved related to the administering of anaesthetic.
The report of Dr. Hamilton, which is also signed by his associate, Dr. Altenberg, reads:
"Diagnosis: Tear of medial semilunar cartilage, right knee, probably traumatic in origin.
"Impression: It is highly improbable that this patient will show appreciable improvement under continued conservative therapy. His torn cartilage has remained locked for several weeks and it is unlikely that it will correct itself without surgical intervention. Even if it did unlock, it would be only a short time until another episode of disability occurred. It is suggested, therefore, that he have a surgical removal of the torn meniscus. This would require only seven to ten days hospitalization and he would be completely disabled for six weeks. This would be followed by a six weeks period during which he could do light work. He should be back to full duty three months following surgery, barring complications."
This report also contains measurements made of the right and left legs, the calves, knees and thighs, which were the same save in some minor respects.
X-ray pictures of the knee did not reveal evidence of fracture or dislocation, recent or old. The report says: "All joint surfaces are well preserved as are joint spaces. There is no evidence of arthritis or disease. Normal right knee roentgenologically."
The medical testimony convinces us that the medial semilunar cartilage of the knee has been torn, and that the disengaged piece of cartilage produces the locking of the joint, from time to time, of which plaintiff complains, and the disability. It does not appear that any complications have developed. And it is also made probable from that testimony that the disability arising from this pathology of the knee will continue until and unless the recommended operation is had. There are cases of knee injuries, however, confined to the ligaments, in which recovery of ability to work was attained without the aid of surgery. That happened in plaintiff's first case. The payment of $3,000 appears to have produced curative benefits equal to and perhaps more, than surgery could have done.
We are convinced that plaintiff's ability to resume work can and will be restored from operations by a competent surgeon, and that such an operation will be attended by a minimum, if any, danger of ill effects. He owes it to himself, at least, to submit to such an operation rather than go through life, possibly a cripple.
*174 We are cognizant of the fact that courts are reluctant to require injured litigants to submit to surgical operations as a condition precedent to payment of workmen's compensation, and we agree with this attitude. See: Yarbrough v. Great American Indemnity Company, La.App., 159 So. 438; Bronson v. Harris Ice Cream Company, 150 La. 455, 90 So. 759; Simmons v. Blair, 194 La. 672, 194 So. 585, 586.
However, we can conceive of cases, such as the one before us, where the surgical operation is so relatively simple and the advantages to be procured thereby are so nearly certain, that the complainant should be required to undergo such. If the operation does not bring about the hoped-for results, very little, if any harm will have been done.
Plaintiff relies heavily upon the case of Simmons v. Blair, supra, and the trial judge based judgment largely thereupon. In that case, as we have found herein, the disability was due to "a fractured internal semilunar cartilage" of the knee joint. However, in that case there were complications and injuries not present in the case before us. There the piece of cartilage, as found by the Court, "protrudes to the medial side of the knee joint causing a tumor mass or growth at that point."
We think the mentioned complications, etc. tender a different situation to that wherein disability is due to a small piece of cartilage being loose, but where no additional pathology is present.
For the reasons herein assigned, the judgment from which appealed, is affirmed with this modification, viz.:
That within sixty (60) days from finality of this judgment, plaintiff will submit to an operation on his right knee by a competent orthopedic surgeon of his own selection, the expense of such, including hospitalization, to be borne by the defendant.
In the event plaintiff refuses to submit to such operation, defendant shall have the right to discontinue making of compensation payments subsequent to the expiration of said sixty (60) day period.
Whether or not plaintiff will be entitled to demand compensation payments, if he submits himself to such operation, after a reasonable time has elapsed to determine whether the desired and expected results have accrued, is hereby left open.
Plaintiff is cast for costs of appeal; all other costs are assessed against defendant.