HARDY, Judge.
This is a suit arising from an automobile accident between plaintiff’s 1941 model Pontiac Sedan and a truck trailer unit owned by the defendant, Roy L. Beaver. The Maryland Casualty Company, Beaver’s liability insurer, was joined as party defendant. After trial there was judgment in favor of defendants rejecting plaintiff’s demands, from which plaintiff prosecutes this appeal.
The accident occurred about 6:00 p. m. on November 20, 1948, at a point known as Lloyd’s Bridge on JJ. S. Highway No. 71 in Rapides Parishsouth of the Town of Le-Compte. At the time' plaintiff was driving south at a speed of approximately forty-five miles per hour and the truck trailer unit of *176 the defendant, Beaver, heavily loaded with bundles of sugar cane, weighing some 28,-000 to 35,000 pounds, more or less, was proceeding north, at a speed of about fifteen miles per hour. Immediately before the vehicles met plaintiff alleges that the driver of the Beaver truck switched his .lights from dim to bright, momentarily blinding plaintiff; that as plaintiff passed the beam of the truck’s lights he was confronted with a large bundle of sugar cane which had apparently fallen from the truck into plaintiff’s right-hand highway lane; that he swerved to the left but was unable to avoid striking the bundle of cane, which threw his car out of control off the highway embankment on 'the east side thereof where it overturned in the water of the bayou, which was some two feet deep at the point. Plaintiff and his wife, who was on the front seat of the car with him, were turned upside down in the water and only extricated themselves with some difficulty. As the result of the accident it is alleged that both plaintiff and his wife sustained physical injuries and shock, as particularly set forth in the petitions of their separate suits. 'Further claims are made by both plaintiff and his wife for the loss of various personal belongings, particularly described and valued, and additionally plaintiff claims recovery for the cost of repairs to his automobile.
Plaintiff bases his right to recover damages on the charge that the cane was improperly loaded, as the result whereof a bundle of cane became dislodged from its place in the truck and fell to the highway, thereby creating the unexpected hazard and danger which was the sole and proximate cause of the accident.
The defense is predicated upon denial of any negligence on the part of defendant, Beaver, or his employees in improperly loading the cane truck, and, alternatively, contributory negligence is pleaded as against plaintiff, Huskey, in that he was traveling at a high rate of speed, failing to observe the bundle of cane on the highway, and to bring his car under control, thereby avoiding the accident. ,
Upon these issues the case was tried, developing the usual conflict of testimony between the witnesses for the respective parties.
Immediately ahead of plaintiff’s vehicle, and proceeding in the same direction on the highway just prior to the .accident, was a truck .and empty cane trailer unit, similar in nature to the Beaver unit, belonging to the Haas Investment Company, which was returning to Bunlcie after having delivered a load of cane to the refinery at Meeker. According to the testimony of the driver of the Haas truck,' as it passed the Beaver unit, a projecting bundle of cane fell from the top of the load over the side of the trailer to the highway. The driver testified that the cane in falling shattered his rear view mirror, bending the extension arm to ’the rear. This witness further testified that the wheels of his, trailer did not run over the bundle of cane but that lie felt the bundle strike the deft rear wheel of his trailer. The driver proceeded .to pull his unit over to his right where he brought it to a stop and returned to the point where the cane had fallen to the highway. Meanwhile the accident had transpired..
It is contended by defendants that the Haas truck actually sideswiped the Beaver trailer and that the force of the impact dislodged the half bundle of cane causing it to fall into the west lane of the highway.
We have referred to the cane which caused the accident as being a half bundle, a description which is one of the few un-contradicted facts in the record. This half bundle was apparently some three to four feet in diameter and weighed between two and three thousand pounds. In this connection it is necessary to advert to a description of the usual and apparently customary method of loading these cane trailers according to the testimony of witnesses experienced in the process. The Beaver cradle-like trailer, in which the bundles of cane were loaded, had sides fifty inches in height topped by ..vertical standards- of eighteen inches, giving a total height of some five feet eight inches. The trailer itself is approximately eight feet in width by twenty-two feet in length. In preparing the cane for loading bundles are made up of interlaced stalks of cane about three stalks long in overall length. Two chains *177 are then hound about the bundles near either end and the interlacing of the -stalks is depended upon to hold the bundle in 'the middle. While there is‘a sharp-divérgencé of opinion as to the usual load, it appears to vary from five to nine bundles. The Beaver truck at the time of the accident was carrying seven bundles. In the process of loading one bundle was placed in the center of the trailer toward the front and two bundles wére then dropped on either side. Similarly the rear end of the truck was loaded with three bundles of cane. Inasmuch as the average length of a bundle is shown to he about fourteen feet it is to be observed that the bundles placed "end-to-end would have a total length of some twenty-eight feet or about six feet more than the length of the trailer. A part of the projecting ends of the rear bundles is accommodated by the lowered tail-gate of the trailer but, even so, the rear bundles project some two and one-half feet beyond the rear of the trailer. This -method;of loading obviously takes care of six bundles of cane. • The seventh bundle, in this instance, .-was placed in the center .of the trailer on top of the lower six bundles.
It is contended by defendants that this established method of loading is safe and does not constitute an overload nor any hazard or danger. In support of this contention -certain of defendants’ witnesses testified that the top or seventh bundle extended only about six inches above the standards of the trailer. We do not consider this testimony to be accurate nor can it be reconciled with the physical facts. Accepting the testimony, of defendants’ witnesses as to the size of a bundle of cane being some four feet in diameter, we are at a loss to understand how the method of loading described could accommodate seven bundles in such manner as to prevent the top bundle from being more than six inches above the standards. This argument would indicate that the top of the seventh bundle was only six feet two inches above the floor of the trailer. Even making an exaggerated allowance for the packing down of the bundles, which is done by agitating them, we cannot conceive any method of calculation by which the top of the seventh bundle could be less than eight feet above the trailer bed, or two feet four inches above the standards. It also must be borne in mind that this top or seventh bundle rests, unsecured by chains and unconfined by the sides or standards of the trailer, in its place in the load.
It is -contended on the pa-rt of defendants, and is so testified by at least one witness, that the bundle of cane displaced from the truck was not a part of the top bundle but was a part of the bundle which was loaded at the left rear of the truck. In line with this contention, it is claimed that this bundle Could have been dislodged only as the result- of the application of substantial force, and defendants rely upon their version of the alleged sideswiping between thé Beaver and Haas trailers as the origin of this force: In other words, defendants seek to place the burden for the dislodging of the half bundle of cane, which.'was unquestionably the primary cause of the accident, upon an asserted -collision between the trailers, as the result of which the cane was thrown or pulled from- the Beaver truck.
Careful consideration and study of the testimony bearing upon this point leads us firmly to the conclusion that no such sideswiping -or collision took place. It is true that the driver of the Beaver truck testified that he was sideswiped and that in the - collision one of the standards on the side of his truck was appreciably bent out of place. We think it is significant and convincing that no other witness observed any evidence on the sides of either trailer which would indicate sideswiping contact, and the Beaver driver is the only witness who even noticed the bent standard, though his trailer was examined by others.
As opposed to defendants’ contention we have thp testimony of the driver of the Haas truck to the effect that as he passed the Beaver trailer the bundle of cane fell over the side from the top and in falling shattered his rear view mirror, which was shown by measurement to extend seven and one-half inches past the side of his trailer, and jar-red against his left rear wheel. We think the testimony of this witness not only reliable on its face, but it offers what ap *178 pears to be the most practical explanation of the incident.
Defendants further rely upon the testimony of two Negro men who were standing on the east side of Lloyd’s Bridge as the Beaver truck passed over the bridge and met and passed the Haas truck. The testimony of these witnesses is brief and almost identical. They declared that they saw the Haas trailer sideswipe the Beaver trailer, observed sparks from the contact of the steel bodies, saw the cane fall from the Beaver truck and observed the approaching Huskey automobile three hundred yards away. We think the testimony of these Negroes is too pat to be accepted at full value, and we further observe that both witnesses testified positively to the fact that the Haas truck never did stop but continued on its southbound course. This is established to be entirely false, for, as we have noted, it is conclusively established that the driver of the Haas unit brought it to a stop and returned to the scene of the accident. Under these circumstances we cannot accord even persuasive effect to this testimony.
A further fact of some material bearing upon the issues involved is that the Beaver truck was hurriedly loaded and the driver was instructed to proceed with all possible haste to the Meeker refinery in order that the trailer might be unloaded before such c-perations were suspended for the pight.
Under our appreciation of these facts we feel assured that the falling of the half bundle of cane is attributable to the negligence of the employees of the defendant, Beaver.
Proceeding to a consideration of the charge of contributory negligence on the part of the plaintiff, Huskey, we find little difficulty in resolving this point, under the facts, on the strength of sound and established jurisprudence of our State.
The testimony of plaintiff and his wife, which was uncontradicted by any witness, is that the driver of the Beaver truck shifted his lights from.dim to bright when the Huskey automobile was only a short distance away. According to the preponderance of the testimony the bundle of cane could have fallen to the highway not more than two seconds before the Huskey car, driving at a reasonable speed of forty-five miles per hour, began to pass the Beaver unit. As the Huskey car passed the front of the Beaver truck, and therefore out of the glare of its bright lights, both plaintiff and his wife observed the large bundle of cane immediately in front of their vehicle at a distance of some seventy-five to eighty feet. At a speed of forty-five miles an hour the Huskey car was traveling about sixty-six feet per second. Allowing for reaction and braking time the driver had no possible opportunity of bringing his car to a stop. He did what any experienced and capable driver would have attempted, that is, by turning to the left to clear the obstruction. In this attempt he failed, striking the bundle of cane and losing control of his car as the result. We cannot conceive of the slightest substantiation of the charge of negligence in view of these facts.
It must further be considered that the Haas unit had passed the Beaver truck only a short distance ahead of the plaintiff’s car and there was no indication of any obstruction, for, indeed, there was none, at the time, which plaintiff could and should have observed. He was confronted with an unusual and unexpected hazard which, in our opinion, he was under no duty of law to have observed, and his failure to observe, accordingly, cannot be held to constitute negligence on his part. The type and the nature of the hazard,, in our opinion, clearly brings this case within the principles enunciated in Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Rea v. Dow Motor Co., La.App., 36 So.2d 750; and Lynch v. Fisher, La.App., 41 So.2d 692.
The time element upon which we have above commented is also a factor to be taken into consideration, and was discussed at some length in Lynch v. Fisher, supra.
Having determined that the sole and proximate cause of the accident was attributable to the negligence of the employees of the defendant, Beaver, and further finding that plaintiff is free of any contributory negligence, we proceed to a consideration of the quantum.
*179 Plaintiff’s claims for damages are itemized in his petition as follows:
I.Personal property lost:
(a). 23 Jewel Elgin Railroad pocket watch, value $ 125.00
(b). Cash 200.00
(c). Bridgework, value • 5.00
(d). Eye glasses, value 39.00
(e). Fountain pen, value 15.00
II. Property damaged:
(a). Plaintiff’s clothing and shoes 35.00
(b). Wife’s clothing and shoes 225.00
(c). Luggage 84.00
(d). Automobile damage 950.00
III. Loss of use of automobile 106.00
IV. Loss of wages 184.80
V. Medical expenses 150.00
VI. Personal injuries consisting of hernia, high blood pressure, multiple bruises 10,000.00
VII. Pain and suffering, physical and mental shock and mental anguish 2,500.00
Total $14,618.80
We observe that plaintiff prayed for judgment in the sum of $14,648.80, hut our calculation of the items specifically set forth in plaintiff’s petition, as above enumerated, indicates that the correct total of damages claimed should be $14,618.80.
The matter of the alleged loss of and damage to personal property was vigorously opposed by defendants, and there is considerable and serious conflict of testimony as to these items. The point is made by way of defense to these claims that although plaintiff remained at the scene of the accident for a considerable period of time thereafter, his wife having been removed by a passing car to u hospital, he made no mention of any lost articles. This at best can only be looked upon as negative testimony and cannot be accepted as a compelling refutation of plaintiff’s claims. Unquestionably his condition of shock and nervousness, which was only natural as the ■result of such an unfortunate experience, might account for his failure to go into the details of his property losses at the time. On the positive side defendants introduced the testimony of a witness to the effect that he took charge of Mrs. Huskey’s purse which held a number of the allegedly lost valuables, according to her testimony, and delivered it into the keeping of plaintiff as he prepared to leave the scene of the accident. However, the description of the “purse” by the witness in question was extremely vague and such details as he could give indicate to our minds that he was talking about a lady’s cosmetic bag instead of a purse. We would be extremely loath to hold under the circumstances that plaintiff and his wife could be so lost to all elements of common honesty and decency as to fabricate their stories of the lost articles. Certainly such a fraud, if established, would lay them open to serious criminal charges and we cannot believe that they would undertake such risk with the hope of such little gain. On the whole we are convinced that the loss and damage as set forth under articles I (a) through (e) and II (a) through (c) above have been satisfactorily established. Since no attempt was made to dispute the value asserted by plaintiff the claims must be allowed upon such basis in a total amount of $728.
The damage to the automobile as set forth in article II (d) above must be reduced to the sum of $572.61, which is the estimate of the cost of repairs introduced in evidence on behalf of plaintiff and un-controverted by defendants.
The claim for $19 as a wrecker charge for hauling the automobile into Alexandria, the allowance of which is urged by plaintiff’s counsel in brief, being ultra petitionem, cannot be allowed.
Plaintiff’s counsel also urges in brief the allowance of $212.55 as damages for the loss of use of plaintiff’s automobile. This amount is based upon plaintiff’s alleged profit in transporting passengers to work, together with his bus fare, which he was forced to expend in going to and from his work after the accident. Since the item above noted under III in the sum of $106 is the amount claimed by plaintiff’s petition, no additional claims could properly be al *180 lowed. The sum of $106 represents .plaintiff’s bus fare to and from work for a period of 109 days, and we think this amount in the nature of damages is properly allowed.
The item IV allegedly representing plaintiff’s loss of wages must depend for its validity upon the proof in the record. Plaintiff claimed and testified to the loss of 38 days of which eight were holidays or Sundays. For this loss of time plaintiff seeks recompense on the basis of his earnings of $10.56 per day straight wages and time and a half, $15.84, for Sundays and holidays, aggregating a total of $443.52. We are not satisfied that the testimony in the record is sufficient to establish the fact that plaintiff could or would have worked all of the thirty-eight days including Sundays and holidays for which he claims compensation. Nor is there evidence in the record sufficiently detailed and convincing in nature to satisfy us that plaintiff was actually incapacitated at the times and for the periods contended. Accordingly, the claim for loss of wages is disallowed on the ground of insufficient proof.
Plaintiff’s petition claims medical expenses in the sum of $150 as set forth in item V above. Hospital, doctor and drug bills totaling $194.30 were established on trial without controversion but plaintiff’s recovery must be restricted to the sum claimed in his petition in the amount of $150.
Careful examination and study of the record convinces us that plaintiff’s claims for personal injuries, pain, suffering, etc., as set forth in items VI and VII above, are substantially inflated and materially exaggerated. Plaintiff’s alleged physical injuries consisted of a right inguinal hernia, high blood pressure, multiple bruises, extreme nervousness and shock.
We are not persuaded that the medical testimony preponderates in favor of the contention that plaintiff’s high blood pressure, extreme nervousness and headaches resulted from injuries sustained in the accident. Plaintiff did not complain of any injuries at the time and while it must be conceded that his experience was responsible for temporary shock and nervousness it cannot be concluded that this condition endured for any extended period of time. The only real injury which we think has been established is the traumatic hernia. Not the slightest affirmative evidence appeared in’the récord indicating that plaintiff had suffered from a hernia prior to the accident, and it can only be concluded that the hernia was traumatic in nature and resulted from injury sustained in such accident.
Certainly it must be allowed that plaintiff has undergone a certain degree of physical pain, discomfort, suffering and inconvenience attendant upon the hernia. We think an award of $2,500 should amply compensate plaintiff for his physical injuries, pain, suffering, shock and mental anguish.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of plaintiff, Delmar F. Huskey, and against the defendants, Roy L. Beaver and the Maryland Casualty Company, Inc., in solido, in the sum of $4,056.61, with interest thereon at the legal rate from date of judicial demand until paid, together with all costs.