58 So.2d 261 (1952)
JOHNSON
v.
UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE.
No. 7809.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1952.
Rehearing Denied April 30, 1952.
*262 Morgan, Baker & Skeels, Shreveport, for appellant.
Russell E. Gahagan, Natchitoches, for appellee.
GLADNEY, Judge.
The defendant herein, United States Fidelity & Guaranty Company, the compensation insurer of Daniel Construction Company of Alabama, has appealed from a judgment awarding the plaintiff, Willie Johnson, workmen's compensation at the rate of $30 per week during the period of disability not to extend more than 400 weeks.
Prior to trial, the defendant admitted that plaintiff while working within the course and scope of his employment with the defendant's insured on June 20, 1951, by reason of accidental injury, suffered a bilateral inguinal hernia, and that the employee was entitled to compensation at the rate of $30 per week. The defendant, however, by amended answer tendered to plaintiff a corrective operation, averring that plaintiff's condition could be removed by a reasonable surgical operation without any real danger to life or serious consequences and would yield a positive betterment, and prayed that the court order plaintiff to submit to an operation at defendant's cost by a specialist of plaintiff's choice, within a reasonable time to be fixed by the court or be penalized by termination of the compensation award.
The trial court in written reasons for judgment awarding compensation held the refusal of the employee to submit to such operative procedure was reasonable and not arbitrary. The judgment is supported by a long and unbroken line of decisions sustaining the right of the employee to decline the corrective operation in hernia cases. Counsel for appellant assert, however, that the most recent of these decisions, Hall v. Mengel Company, Inc., La.App., 191 So. 759, was decided in the year 1939, since which time medical science has made great strides in eliminating many of the dangers attendant with surgery performed more than ten years ago. It is further argued that if appellee should submit to the operation it is almost a certainty that plaintiff's ability to resume work can and will be restored, and that such operation will be attended by minimum danger, if any, and with less danger than to allow the hernia to go unrepaired. Further, it is said that plaintiff should undergo the operation rather than go through life a cripple, and that defendant should not be forced to pay compensation because the employee refuses to accept a lesser risk by having the repair work.
The Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., has no provision imposing a duty on the employee to submit to an operation under penalty of forfeiture of the compensation. By Act 85 of 1926 the Act was amended to make this requirement under penalty of limiting compensation payments to 26 weeks should the employee refuse. The Legislature, however, repealed this amendment by Act No. 242 of 1928. The first case in Louisiana to present the issue here involved was that of Bronson v. Harris Ice Cream Company, Inc., 1922, 150 La. 455, 90 So. 759. The plaintiff therein refused to submit to an operation to remove broken parts of his knee and judgment was rendered adverse to him. On appeal he recited the provisions of the Workmen's Compensation Act, Act No. 20 of 1914, to the effect that payments of compensation thereunder "should be exclusive, compulsory and obligatory" and that if the court required *263 him to submit to an operation, the court would, in effect, be adding a condition to the Act since it did not provide for such an operation in the "terms, conditions and provisions hereinafter set out in this act". He further argued that Section 36, LSA-R.S. 23:1033, of the Act provided:
"That no contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this act except as herein provided."
Justice Provosty, the organ of the court in the Bronson case, commented that the purpose of the Act would in a large measure be defeated if the door were opened for discussion as to whether the injured employee should, or should not, have recourse to an operation and that this would be adding uncertainty where the law clearly desires that there should be none. He then added a qualification:
"At the same time we must recognize that such a thing might be as an injury curable by an operation so simple and unattended by risk that plainly the real cause of the disability would be not so much the injury as the not making use of the easy remedy at hand."
Since the decision above referred to we find reported only three cases in the jurisprudence of this state where the employee has been ordered to submit to an operation. These are: Leday v. Lake Charles Pipe & Supply Company, La.App.Orleans 1st Cir., 1939, 185 So. 655 (finger injury); Powers v. Allied Chemical & Dye Corporation, La.App. 1st Cir., 1950, 46 So.2d 332 (finger injury); Fredieu v. Mansfield Hardwood Lumber Company, La.App. 2d Cir., 1950, 53 So.2d 170 (knee injury).
Wherever the issue has been presented to the appellate courts of this state, except in the above referred to three cases, the courts have refused to discontinue the employees compensation on his refusal to submit to a corrective operation. We have not found in our Louisiana jurisprudence and none has been pointed out to us, where the court has in any instance sustained an order requiring an employee to submit to an operation for hernia. The following cases held that employee's refusal to so submit was reasonable: Addison v. Powell Lumber Company, 1st Cir., 1924, 1 La.App. 210; Bossier v. Louisiana Oil Refining Corporation, 2nd Cir., 1925, 3 La.App. 205; Hilliard v. Merkel Construction Company, 2nd Cir., 1926, 4 La.App. 40; Martin v. Wyatt Lumber Company, 2nd Cir., 1926, 4 La.App. 157; Britt v. Texas Pipe Line Company, 2nd Cir., 1926, 5 La.App. 33; James v. Hillyer-Deutsch-Edwards Company, 1st Cir., 1930, 15 La.App. 71, 130 So. 257; Huval v. Sexton Corporation, 1st Cir., 1932, 19 La.App. 198, 139 So. 739; Flanagan v. Sewerage & Water Board, 1932, 19 La.App. 154, 140 So. 83; Durrett v. Unemployment Relief Committee, La.App. 1st Cir., 1934, 152 So. 138; Crawford v. Tampa-Inter-Ocean S. S. Company, La.App. Or., 1934, 155 So. 409; Finley v. Texas Company, La.App. 2nd Cir., 1935, 162 So. 473; Wood v. Peoples Homestead & Savings Association, La.App. 2nd Cir., 1937, 177 So. 466; Hall v. Mengel Company, La. App. 1st Cir., 1939, 191 So. 759.
The following cases outline rather fully the reasons for compulsory submission, although the first two cases were decided in favor of the employee: Reeves v. Dietz, Orleans, 1925, 1 La.App. 501, 503; Crawford v. Tampa Inter-Ocean S. S. Company, La.App.Or., 1934, 155 So. 409; Fredieu v. Mansfield Hardwood Lumber Company, La. App. 2nd Cir., 1950, 53 So.2d 170.
In Reeves v. Dietz, supra, the court therein quoted these words from Strong v. Sonken-Galamba Iron & Metal Company, 109 Kan. 117, 198 P. 182, 186, 18 A.L.R. 415:
"The state goes to great expense to fit its people for work, to protect them in their work, and to secure to them the result of their labor. Then if a man who receives these favors from the state will not work he at least is not a good citizen.
"The plaintiff has been injured. The injury can be remedied, and he can be restored to his former condition. It is his duty to do whatever is necessary to restore him. If he refuses to perform that duty, he should not ask the state nor any person to assist him in that *264 refusal. He cannot be compelled to undergo an operation, but he can be told that if he refuses he shall not receive compensation for that which he voluntarily continues."
The Reeves case also recited the reasoning in Donnelly v. Baird & Company, Ltd., 1 B.W.C. 95, an English decision, saying:
"* * * I hold it to be the duty of an injured workman to submit to such treatment, medical or surgical, as involves no serious risk or suffering, such an operation as a man of ordinarily manly character would undergo for his own good, in a case where no question of compensation due by another existed. * * *
"* * * I can see no general principal except this, that if the operation is not attended with danger to life or health, or extraordinary suffering, and if, according to the best medical or surgical opinion, the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him."
In the Crawford case Judge Janvier pointed out that where an order is requested for a corrective operation the order is an alternative one, and that the injured party, in any such case, is free without rhyme or reason to refuse to submit to surgical treatment, or in fact to refuse to submit to any treatment at all, or be penalized by suspension of compensation. It was recognized that any injured party must do all that he reasonably can to minimize his loss and that where an operation will be attended by only slight risk and will almost certainly be successful, it must be resorted to.
Judge Taliaferro found in the Fredieu case that the disability in plaintiff's knee was due to a small piece of cartilage being loose but there was no additional pathology present, and stated the view of this court [53 So.2d 174]:
"* * * we can conceive of cases, such as the one before us, where the surgical operation is so relatively simple and the advantages to be procured thereby are so nearly certain, that the complainant should be required to undergo such. If the operation does not bring about the hoped-for results, very little, if any harm will have been done."
The most recent case involving the particular issue here presented is that of Hall v. Mengel Company, supra, and in this decision, at page 760 of 191 So., is to be found the principal grounds for sustaining as not unreasonable the refusal of an employee to accept a tendered operation.
"* * * first, the operation is not a minor or simple one, but is classed as a major one; second, the danger to life one chance out of a hundred of losing his lifeis too great, and the probability of a recurrencefrom five to ten per centrenders the result too uncertain; and, third, there would be considerable pain and discomfort, with a long period of confinement and convalescence."
The court in that case referred to the language used by Judge Odom in Martin v. Wyatt Lumber Company, supra, 2nd Cir., 1926, 4 La.App. 157:
"It is a fact known to all that hundreds of men of intelligence and with means to procure the services of the greatest surgeons of the land, go through life wearing trusses for hernia rather than submit to an operation, notwithstanding the fact that a truss is a source of discomfort in many cases and always inconvenient and more or less cumbersom. The average man dreads any kind of an abdominal operation. Instinctively he feels that when he submits to such an operation he takes a chance of losing his life, and from observation he knows that is true. For that reason men of intelligence endure afflictions through life rather than take a radical treatment which in all probability would relieve the disability but at the same time might end fatally. It may be said, we think, *265 that the more informed people are as to the results of such operations the less they dread them, but the fact remains that the best informed do dread them. That being true, what may be expected of the average wage-earner who is not informed? He shrinks instinctively from what are recognized to be major or serious operations, and the advice of all the experts cannot remove from his mind the fear and dread of such radical treatment."
It was testified by Dr. Roy:
"Q. Doctor, if a person suffering from the injury we mentioned does not have surgery to correct the injury, would you say that down through the years his health and efforts might be hampered somewhat? A. His ability to do hard work would be hampered but unless he gets strangulated, I wouldn't think his health would be impaired. Just because a man has a hernia doesn't mean he has bad health. To begin with, he might wear trusses to hold the hernia in but, of course, the hernia might get large enough where any straining or physical labor might be out of the question."
In Hall v. Mengel Company when it was stated in brief that the employee has the right to refuse to obey the order of court that he must undergo an operation, the court answered that should the employee's compensation cease the deprivation of means for procuring the necessities of life might be just as strong compulsion toward submission as the fear of physical punishment.
The issue herein, in its final analysis, is whether appellee's refusal was arbitrary or unreasonable. Plaintiff, 49 years of age, was working as a carpenter when he sustained a bilateral inguinal hernia. He alleges that on June 20, 1951 he was working up in the ceiling of a building and started to swing off a ceiling joist to the floor and that in order to accomplish this, he caught the ceiling joist with his hands and started to swing down to the floor when just as he started to negotiate this movement his helper raised up from a squatting position and shifted to the spot where he contemplated landing on his feet, and that when this occurred plaintiff attempted to check his movement and in doing so twisted, jerked and sprained his entire body, but particularly his stomach, abdomen and groin, resulting in the injury aforesaid.
Medical testimony in the case was given by Drs. W. H. Pierson, R. S. Roy, J. H. Eddy, Jr. and H. C. Ilgenfritz. These doctors were in accord in testifying that an operation as proposed would remove plaintiff's disability and there is little danger such an operation would cause death. They further testified that the possibility of recurrence is probably not over 5%. Both Drs. Pierson and Roy testified that within the past decade there has been no great deal of progress made in the surgical technique in a hernioplasty. Dr. Pierson stated that this technique had reached it present stage of perfection some 25 or 30 years ago. All experts agreed that generally speaking complications were about the same as ten years ago, but new methods and drugs permit of better and safer treatment before, during and after the operation. A general anesthetic rather than a local, is usually employed in the hernia operation. All witnesses were in accord that there is still a certain risk or danger when a general anesthetic is used. The improvements brought into this kind of surgery during recent years are described:
New operative techniques and new materials for use in the repair of hernias; the arrival of numerous anti-biotic drugs to combat infection; newer anesthetic agents, equipment and methods, and better trained personnel in relation to anesthesia; and the practice of ambulation for elimination of complications.
Without depreciating the admirable progress it is nonetheless true that hernioplasty is still considered by the medical profession a major operation, and as such is susceptible to serious complications. Dr. Roy testified that complications following an operation for hernia include the same experienced in any major surgery and he enumerated pneumonia, acute nephritis, thrombo-phlebitis, and infections of the wound. Also, it *266 is a generally accepted fact that a general anesthetic can cause grave risk of life to a man with a weakened heart, and to a degree mortality continues with major operations where the heart condition has not been properly appraised.
We assume that prior to his refusal Johnson was informed as to the risk and dangers which might beset him. Dr. Eddy testified that when he told appellee it would be best for him to undergo surgery, Johnson told him he did not like to be "whittled" on, and that if he told him once, he told this to him ten times, and that he was afraid to be operated on. From this evidence we feel sure plaintiff was fearful of the results of the operation and deliberately made his decision.
With the improvements in surgical procedure made during the past decade it is undoubtedly true that the safety of a patient has been immeasurably increased but we are unable to agree with appellant that this is a case where a corrective operation should be forced upon the employee under penalty of loss of compensation should he refuse. We must bear in mind that appellant is a man of 49 years of age and being a carpenter, has, no doubt, been employed at manual labor a greater part of his lifetime. Experience has taught us that at such an age the tissues of the body and its functioning have undergone certain degenerative processes not present during the more youthful stages of life. Complications and recurrence of the hernia at the age of forty-nine, therefore, can be expected to be more prevalent than in the earlier years.
Appellant emphasizes the danger from a strangulated hernia which may occur in an unrepaired hernia when the bowel gets caught in the hernia ring or sac and circulation is cut off, and it is argued that the danger of carrying a hernia unoperated, is greater according to the testimony of some of the medical witnesses, than the danger from an operation of an uncomplicated hernia. It is further pointed out that the hernia will not disappear except by surgical correction and, in fact, will always grow larger, thereby lessening the individual's ability to work. The consensus of the opinion among the expert witnesses was that operation was advisable in as early stage as possible upon a healthy individual without complications and without debilitating disease.
Just as progress has been made in operative technique and in the treatment of a patient before, during and after a hernioplasty, we may expect that since Judge Odom's opinion in Martin v. Wyatt Lumber Company, 1926, supra, improvements have been effectuated in appliances and devices, such as trusses, for reducing danger from hernia strangulation, and thus lessening risks from unrepaired hernia. How great these risks are and whether they outweigh the hazards of losing his life incurred by the individual when he undergoes a major operation, are questions which, we believe in the absence of statutory compulsion, should be more within the province of the employee to decide than the court. Where there is danger to his life we must hesitate to substitute our opinion for that of the employee.
Perhaps the time will come when, as to a hernia operation upon an employee, we can say certainly there is no danger to life, the operation will be successful, the individual will be restored to useful employment, and he will be relieved of the burdens and uncertainties of an unrepaired hernia. Then, and not until then should we penalize the injured worker for refusal to submit to an operation. In such a case the facts will clearly indicate the unreasonableness and arbitrariness of the refusal.
For the foregoing reasons the judgment appealed from is affirmed at appellant's cost.
McINNIS, Judge ad hoc, is recused.