On the Merits
In our opinion and judgment of June 18, 1952, we ordered this case remanded for the purpose of supplementing the record on the essential fact as to the tender and the refusal of an operation. This order has been complied with by a stipulation of counsel for the respective parties representing an agreed statement of fact which has been duly filed in this Court. There is no necessity for passing upon the application for rehearing, included in the joint motion of counsel, which accompanied the filing of the stipulation. In the interest of avoiding further delay in the disposition of the case we proceed to a determination of the appeal.
The only issue tendered by the appeal was stated in our opinion above noted, and needs no further restatement or elaboration.
While employed as a driller’s helper, or rough-neck, engaged in the performance of the accustomed duties of such occupation on a drilling rig of his employer on February 21, 1951, plaintiff sustained serious injuries resulting from an accident in which the cat line on the rig became twisted about his right arm, severely injuring the muscles, ligaments and tendons in the area of the right shoulder. The exact injury sustained by plaintiff has been diagnosed as being an acromio-clavicular separation of the right shoulder. The testimony of the medical experts is conclusive on the point that this injury is permanently and totally disabling by reason of the tearing and subsequent disintegration of the ligaments which hold the clavicle or collar bone to the coracoid process, a bony projection of the scapula.
It is further established that the only hope for any real relief of plaintiff’s condition, that is, pain, weakness and inability to fully use his right arm, rests in surgical intervention, the performance of an operation to repair the damage.
Defendant urges that an operation can restore the complete usefulness of plaintiff’s arm, wherefore they pray, alterna *713 tively, that he be ordered to undergo an operation by a specialist in the field of orthopedic surgery of his own choice under penalty, in the event of his refusal, of forfeiture of compensation payments. As a condition precedent defendants have established that they have tendered such an operation to plaintiff at their expense, which tender has been arbitrarily refused.
For the third time in the course of slightly more than a year this Court finds itself confronted with the determination of the merit of an injured employee’s refusal to submit to a surgical operation. In Fredieu v. Mansfield Hardwood Lumber Company, 53 So.2d 170 (writs refused), decided May 30, 1951, this Court held that the employee’s refusal to submit to an operation for the repair of a tear of the medial semilunar cartilage of the right knee was arbitrary and unreasonable and entered judgment ordering plaintiff to submit to such operation within a period of sixty days, and in the event of his continued refusal, authorizing the discontinuance of his compensation payments. In the recent case of Johnson v. U. S. Fidelity & Guaranty Company of Baltimore, Maryland, La.App., 58 So.2d 261 (writs refused June 2, 1952), this Court refused to order a 49-year old employee to submit to a surgical operation for the repair of a hernia.
We predicated our judgment ordering an operation in the Fredieu case upon the conclusion, as expressly stated in the opinion, that the operation was relatively simple and the advantages to be procured thereby were so nearly certain that the claimant should be required to submit. Contrariwise, in the Johnson case, we expressed the opinion that a hernia operation was susceptible of serious complications constituting grave dangers to life itself, and, further, that the likelihood of relief was uncertain and speculative. Additionally, there was another element present in the Johnson case which was the fear of a serious operation on the part of the plaintiff himself.
In the instant case we are able to eliminate certain factors which necessarily enter into consideration of the major question. We think the evidence in the record before us fully justifies the conclusion that an operation in the acromio coracoid area is relatively simple, is not attended with any extensive pain or suffering, and there is a minimum danger of any fatal results. These conclusions leave one important -consideration, namely, whether an operation would be reasonably certain to restore the full use and function of the arm. Under the facts adduced we are constrained to ■find that this point has not been affirmatively established.
Bearing directly upon this question we are impressed with the sharp divergence of opinion as expressed in the testimony of the medical experts. This was adduced from two general 'practitioners and one orthopedic specialist tendered as witnesses for plaintiff, and one orthopedic specialist, who appeared as a witness on behalf of defendant. Both specialists are possessed of the highest qualifications and their resepec-tive reputations in this field are beyond question. The specialist who testified on behalf of plaintiff recommended two operative techniques, either of which he felt assured would bring about a marked improvement and probably complete relief of plaintiff’s condition. The doctor suggested the excision of the distal third of the clavicle and asserted that this procedure would relieve plaintiff of -the pain which he now suffers, would restore a considerable part of the use of his arm, and would permit him to build the strength of his shoulder back to a condition approaching normal. However, admittedly, this suggestion was subject to some criticism, and the -technique which this witness appeared to prefer and to more highly recommend involved the removal of a strip of fascia from the thigh and its use for reconstruction of the ligatures binding the outer portion of the clavicle to the coracoid process of the scapula.
The orthopedic specialist tendered by defendant questioned the efficacy of the techniques suggested by plaintiff’s witnesses and stated his positive preference for a third procedure, namely the fusion of the outer end of the clavicle with the scapula. Plaintiff’s expert did not have the opportunity to express his opinion on this spe- *714 ciflc recommendation, but since it was not even considered or mentioned in his testimony, it is to be reasonably assumed that he would no more favor such a technique than his colleague approved the ones he suggested. Additionally, there is in the record the testimony of one of the general practitioners who attended and treated plaintiff, and who was thoroughly familiar with the case from every standpoint, which testimony seriously questioned the practical value of the fusion technique on the ground that it would incline to become stiff and thereby cause a consequent impediment in the use of the shoulder.
We do not think lit necessary for this Court, composed of laymen, to pass upon the efficacy, vel non, of what are, obviously, involved and disputed questions of surgical procedure. The one principal fact with which we are here concerned is that the medical experts could not agree among themselves and it is a quite conclusively established fact that plaintiff in this case not only failed to receive reasonable assurance of the probability of a cure of his condition, but was confronted with a violent disagreement between -the medical consultants. It is no wonder, indeed, if plaintiff was bewildered and confused and, certainly, it is clear that the result of such confusion had the effect of prejudicing his mind against submission to an operation. Surely under such circumstances his refusal cannot possibly be construed as arbitrary or unreasonable, but, on the contrary, must be considered to be completely justifiable.
We have no difficulty in resolving the conclusion that in instances where distinguished medical scientists are in disagreement as to -the character, nature, procedure and result of proposed surgical intervention, it would be presumptuous and unjust for any court to pronounce the judgment sought by defendants herein.
For the reasons assigned the judgment appealed from is affirmed at appellants’ cost.