HARDY, Judge.
Plaintiff seeks by this suit to recover an award of compensation for alleged total and permanent disability against defendants, the employer and his insurer. After trial there was judgment in favor of plaintiff awarding compensation at the rate of $26 per week for a period not exceeding 400 weeks, subject to credits for compensation already paid, from which judgment defendants have appealed.
It is established, without dispute, that on or about May 4, 1955, while in the employ of John A. Mitchell, d/b/a Lincoln Builders, who carried a policy of workmen’s compensation insurance with the Manufacturer’s Casualty Insurance Company, plaintiff sustained an accident resulting in a double inguinal hernia. Concededly, plaintiff is considered to be permanently and totally disabled unless he chooses to procure surgical ■ correction and repair of the hernias. Herein lies the principal issue which is tendered by this appeal. Defendants have offered to assume the financial *473 responsibility in connection with a surgical operation for the repair of the disability which plaintiff suffers by reason of his condition. Plaintiff refuses to undergo the necessary surgical operation for the repair of his condition, and, as a consequence, defendants urge that plaintiff has forfeited his right to a continuance of compensation. The only other facts in connection with this issue are that plaintiff was paid compensation at the rate of $26 per week up to date of November 7, 1955, at which time he was notified that no further compensation would be paid until and unless he agreed to submit to a corrective operation.
This court is confronted with the necessity for determining whether plaintiff should be ordered to submit to an operation or, in the event of his continued refusal, whether defendant should be relieved of liability for continuance of compensation payments. The proposition is not new and has been many times considered by the appellate courts of this State in one form or another, which observation, however, does not serve to eliminate the serious aspect and the far-reaching results of such judgment as may be rendered.
The most recent case in the jurisprudence of this State was that of Johnson v. United States Fidelity & Guaranty Company of Baltimore, 58 So.2d 261, decided by this court, after original hearing, on March 28, 1952; rehearing denied April 30, 1952, and writs refused by the Supreme Court June 2, 1952. After consideration of the able and detailed discussion of the proposition as contained in the opinion of Judge Gladney, who was the organ of this court, we think it is practically impossible to add any further comment which would be of substantial importance of material bearing upon the fundamental propositions.
However, it is pertinent to observe that we have had one occasion for consideration of this question since the disposition of the Johnson case. We refer to French v. Employers Mut. Liability Ins. Co. of Wisconsin, 70 So.2d 179, decided by this court on original hearing January 26, 1954; rehearing denied February 16, 1954. Following application for rehearing and denial thereof, plaintiff .applied to the Supreme Court for writs, and, on March 22, 1954, the Supreme Court granted a writ of certi-orari. We have not been notified of any further official action in connection with this case but, by reason of certain information derived from unofficial sources, we feel justified in assuming that this writ was recalled and vacated, following a compromise settlement between the parties litigant.
Our conclusion in the Johnson case, which must serve to support a similar conclusion in the instant matter, was adequately and succinctly expressed as follows [58 So.2d 266]:
“Perhaps the time will come when, as to a hernia operation upon an employee, we can say certainly there is no danger to life, the operation will be successful, the individual will be restored to useful employment, and he will be relieved of the burdens and uncertainties of an unrepaired hernia. Then, and not until then should we penalize the injured worker for refusal to submit to an operation. In such a case the facts will clearly indicate the unreasonableness and arbitrariness of the refusal.”
Because of the excellent and persuasive presentation which has been made by learned and diligent counsel for defendants, we think fairness requires us to declare that the facts in the instant case vastly preponderate against the reasonableness of plaintiff’s refusal to submit to an operation. The medical experts on the part of both plaintiff and defendants are in complete unanimity of opinion on the proposition that the plaintiff in this case is an excellent operative risk; that there is little, if any, danger of complications; and that the operative risk is practically nil. None of the doctors had any hesitancy in recommending surgical procedure and the element of risk was approximated, purely in the nature of a professional opinion, as being perhaps “one-half of one percent.” The testimony as to the probability of recurrence or of failure to obtain satisfactory results, which would restore plaintiff to his former ability to engage in manual labor, *474 was equally favorable. In short, it would be difficult for us to conceive of a case in which the elements of risk would be as slight or could be more conclusively resolved as indicating the desirability of operative procedure.
The foregoing observations have been made because we think the one element which has been left open to doubt by the pronouncements of our courts involves the question as to whether, under any circumstances or conditions it is appropriate for a court to order an employee to submit himself to an operation for the repair of an inguinal hernia, under penalty of termination of compensation payments.
As pointed out in a discussion of this problem by Professor Malone in his work on Louisiana Workmen’s Compensation Law and Practice, Section 234, page 289:
“ * * * the courts have consistently refused to order a hernia operation. In some cases they have announced frankly that a hernia operation will not be ordered under any circumstance, but other decisions have left the way open for a proper case.”
In our opinion we are confronted in the instant case with a clear-cut proposition which requires us to answer this question:
Should a court order an employee to submit to a surgical operation for the repair of an inguinal hernia ?
The conclusion which we have reached, and which is hereinafter set forth, has been influenced by a number of factors. First, we observe that there is no statutory authority which serves either as a directive or a guide to a judicial decision on this point. But in this connection, we are impressed with the fact that by Act No. 85 of 1926 the Legislature of this State amended the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., and, among other provisions, incorporated therein, Section 8(d), par. 17 certain detailed provisions which provided for termination of payment of compensation after a specified period of time in the event an employee refused to permit an operation for hernia. By Act No. 242 of 1928 the Legislature again amended the Workmen’s Compensation Statute and omitted from such amendment all of the statutory provisions with respect to the rights, as between employee and employer, resulting from hernia suffered by the employee.
We think this action of the Legislature must be considered to have a particular significance, for, to our minds, it very definitely justifies the conclusion that the Legislature was unwilling to continue the responsibility which it appeared to have assumed by the provisions of the Act of 1926. If the State Legislature by this action has clearly demonstrated its unwillingness to compel submission to a hernia operation, then it is only human for us to ask ourselves by what authority we are expected to assume and exercise such a responsibility.
The distinction between the instant case and the circumstances involved in the case of French v. Employers Mutual, cited supra, is clearly apparent and is demonstrated by the following quotations from the opinion of this court in the French case [70 So.2d 188] :
“The situation here is to be further distinguished from the situation in Johnson v. U. S. Fidelity & Guaranty Co., La.App., 58 So.2d 261 (which involved the question of an operation for a hernia) and all the cases involving abdominal operations, for the reason that in the case at bar, the operation involves only a limb, and it appears that any complication that might arise, if any, from an operation thereon could be more easily cmd more successfully dealt with and controlled than in an operation on the abdomen.
* * * * * ¡N
“We are convinced from all of the testimony in the case that plaintiff’s condition can be corrected, if not completely cured, by a relatively simple operation; that such an operation is in no sense dangerous to life, or attended by unusual risk, and is reasonably sure of success, and that plaintiff is under *475 a duty to submit to such operation, without cost to him, and by an expert of his choice, in order to correct and relieve his existing disability and in order to restore himself to a state of usefulness to himself, his family, and society.” (Emphasis supplied.)
Thorough examination of the jurisprudence of this state involving the right of an employer to insist upon submission to an operation by ah employee, under penalty of discontinuance of compensation, indicates that our courts have been somewhat timid in coming to grips with the issue itself. In short, we have evaded the enunciation of a definite and unequivocal principle which could and would serve as an established precedent. The result has been to leave an area of indecision and uncertainty. Illus^ trative of this somewhat hesitant judicial approach to the problem and of the resulting vagueness and confusion, we point out the following conclusions which have been reached:
(1) In Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759, the Supreme Court in 1922 held that the refusal of plaintiff to submit to surgery on his knee was not unreasonable in consideration of his advanced age, the proposed administration of anaes-thetic, and the fact that the procedure was classified as a major operation. Notwithstanding this conclusion, the court indicated that refusal to submit to simple operations, unattended by risk, might be considered, in future, as justifying termination of compensation.
(2) Operations of a relatively minor nature have been ordered by our courts subject to the alternative termination of compensation. Smith v. Butler, 1927, 7 La.App. 338; Leday v. Lake Charles Pipe & Supply Co,, La.App.1939, 185 So. 655; Powers v. Allied Chemical & Dye Corporation, La.App.1950, 46 So.2d 332; Fredieu v. Mansfield Hardwood Lumber Co., La. App.1951, 53 So.2d 170; French v. Employers Mutual Liability Ins. Company of Wisconsin, 1954, cited and commented upon supra.
(3) In numerous considerations of proposed operations for the repair of hernias it is important to note that- none of our appellate tribunals have consented to order an employee to submit to such surgical procedure. As noted in Professor Malone’s work, cited supra, the courts in some cases have announced that they will not order such an operation under any circumstances, and in other cases the question has been left open.
(4)Finally, it is obvious that some of our courts, ours being one, have chosen to pitch their refusal to order an operation upon the facts of a given case, but have indicated a somewhat equivocal position with respect to cases which might develop in future. Particularly there have been' frequent references in the opinions of the courts, by way of somewhat vague generalizations, to a rule of reason. In other words, it has been implied, if not actually expressed, that an operation very probably would be ordered if it should be shown in any given case that the employee’s refusal was “arbitrary or unreasonable.”
We think the time has come for, and we are here confronted with a factual situation which demands, a definite expression of a principle, with reference to hernia operations, which will be observed in future.
We concede, as we have above noted, the clearly established facts of the instant case which would persuade any reasonable man that the risk of operative procedure is almost non-existent. But in- our hearts we know that some degree of risk, slight though it is, yet remains. Though this risk should be only one in 1,000 chances instead of one in 100 or 200, as is indicated by the testimony in this case, we, nevertheless, cannot conceive it to be our duty to order such an assumption of risk. We deal here not alone with matters of dollars and cents, but with the matter of life or death. While we are firmly convinced that the almost certainly beneficial results to plaintiff in the instant case far outweigh the attendant remote danger, this is a decision which he must make for himself, and we are unwilling to substitute our judgment and thereby become the agents of compulsion.
*476 For these reasons we have reached the conclusion that we are without authority, either by statute or by judicial precedent, to grant the relief which is sought by defendants.
The one remaining issue involved in the instant case concerns the basis of plaintiff’s wages and the consequent amount of weekly compensation to which he is entitled. By an answer to the appeal, plaintiff prays for an increase in the amount. On behalf of plaintiff it is urged that he is entitled to have his rate of pay determined upon the basis of a six-day week of eight hours per day rather than a five-day week of eight hours per day which was accepted by the district court. There is no dispute as to plaintiff’s rate of pay of $1 per hour, which apparently was fixed by agreement between employer and employee without an additional overtime rate, no matter how many hours per week plaintiff actually worked. Plaintiff testified that he worked on Saturday most of the time and worked “eight hours a day mostly.” On behalf of defendant employer it was testified that plaintiff worked regularly five days per week and that his employment on Saturdays did not occur more than once a month. Payroll records for 1954 and a portion of 1955 were filed in evidence on behalf of defendants. Unfortunately these records, as is so often the case with reference to day laborers, do not reflect any consistency of employment over a period of weeks. The identical question which is here concerned with reference to fixing the basis for compensation arose in the case of Carrington v. Consolidated Underwriters, La.App., 80 So.2d 427, in which we found that plaintiff’s work record was consistent with a regular period of employment based upon a five-day week of eight hours per day, despite the fact that he occasionally worked on Saturdays. In the cited case, as here, plaintiff was not employed on the basis of a six-day week, and, because the extra hours of employment were of almost negligible importance, we based our allowance upon a five-day, forty-hour week. Writs were granted by the Supreme Court and we are informed that the case has recently been decided, but, in view of the fact that we have not had the opportunity to read the opinion, we do not know that the conclusion reached by the Supreme Court on this particular point differs from our holding in the Carrington case. It follows that, at least until more fully informed as to any change, we must adhere to the law on this point as we have heretofore construed it.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.